**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 09-cv-02848-WDM-KMT

RICK GROSVENOR,

          Plaintiff,

v.

QWEST COMMUNICATIONS
INTERNATIONAL INC., et al.,

          Defendants.

---

**DEFENDANTS' MOTION TO COMPEL ARBITRATION**

---

Pursuant to Fed. R. Civ. P. 12(b)(1) and 9 U.S.C. §§ 3, 4, Qwest Communications International Inc., Qwest Services Corp., Qwest Corp., Qwest Communications Company, LLC, and Qwest Broadband Services, Inc. (collectively "Defendants" or "Qwest") hereby move to compel arbitration.

## <u>INTRODUCTION</u>

Plaintiff is seeking to sue Qwest in a federal court class action for breach of the parties' High Speed Internet Subscriber Agreement ("Agreement" or "Subscriber Agreement") in direct contravention of the Agreement's alternative dispute resolution requirements.  The Agreement expressly and unequivocally waives all class actions and requires that Plaintiff pursue his claims either in binding arbitration or in small claims court, and not in this setting.

Plaintiff does not dispute that his claims fall squarely within the terms of the Subscriber Agreement (he is pursuing claims under the contract, after all), nor does he dispute that the Subscriber Agreement by its terms requires mandatory arbitration or small claims court

resolution of his claims without a class action.  Instead, Plaintiff alleges, in conclusory fashion, that the dispute resolution process under the Agreement should be voided in its entirety because, without a class action, it is one-sided and unconscionable in light of the amount of his damages.

Plaintiff's claims fly in the face of the terms of the Agreement and the established law in Colorado and this jurisdiction.  Plaintiff had many choices for internet service, and freely chose Qwest's service with its attendant terms and conditions.  The Agreement provides Plaintiff with fair, meaningful, and cost-effective options for the resolution of his dispute, regardless of the amount in controversy.  Indeed, in *Ornelas v. Sonic-Denver T, Inc.*, C.A. No. 06-cv-00253-PSF-MJW, 2007 WL 274738, at *1 (D. Colo. Jan. 29, 2007), the Court, the Honorable Judge Phillip Figa presiding, held that an arbitration provision with a class action waiver in a consumer contract, such as the Subscriber Agreement, is conscionable.  And in *Bonanno v. Quizno's Franchise Co., LLC*, No. 06-cv-02358-CMA-KLM, 2009 WL 1068744, at *21 (D. Colo. April 20, 2009), the Court, The Honorable Judge Christine Arguello presiding, held that a class action process is a procedural right that can be waived by contract.

The Subscriber Agreement's dispute resolution process is proper, is binding under the established law of this District, and is consistent with the public policy favoring alternative dispute resolution under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") and Colorado law.  Plaintiff's claims should be stayed and Plaintiff should be required to pursue his claims in arbitration under the terms of the Agreement, or, if Plaintiff so elects, this case should be dismissed while Plaintiff pursues his claim individually in small claims court.

## FACTUAL BACKGROUND

In his Complaint, Plaintiff asserts that Qwest inappropriately raised the price of his internet service, claims damages of approximately $5 per month, and seeks class action standing

to pursue breach of contract, promissory estoppel, unjust enrichment, and consumer protection act claims.  (Compl. ¶¶ 1, 15-18, 39-59.)

In pleading these claims, Plaintiff recognizes that the Subscriber Agreement for Qwest's internet services expressly and specifically waives class actions and provides that all disputes other than those related solely to the collection of a debt owed to Qwest shall be resolved in either individual arbitration with certain cost-shifting to Qwest or in small claims court.  (Compl. ¶¶ 22-25.)[1]  Specifically, Section 17 of the Agreement ("Dispute Resolution Clause" or "Arbitration Clause") provides:

17.     **Dispute Resolution and Arbitration; Governing Law**.  PLEASE READ THIS SECTION CAREFULLY.  IT AFFECTS RIGHTS THAT YOU MAY OTHERWISE HAVE.  IT PROVIDES FOR RESOLUTION OF DISPUTES THROUGH MANDATORY ARBITRATION WITH A FAIR HEARING BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY OR THROUGH A CLASS ACTION.

(a)     Arbitration Terms.  You agree that any dispute or claim arising out of or relating to the Services, Equipment, Software, or this Agreement (whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory) will be resolved by binding arbitration.  The sole exceptions to arbitration are that either party may pursue claims: (1) in small claims court that are within the scope of its jurisdiction, provided the matter remains in such court and advances only individual (non-class, non-representative, non-consolidated) claims; and (2) in court if they relate solely to the collection of any debts you owe to Qwest.

(i)     *Arbitration Procedures*.  .  .  .  .  The arbitration shall be conducted by the American Arbitration Association ("AAA").  The Federal Arbitration Act, 9 U.S.C. Sections 1-16, not state law, shall govern the arbitration of the dispute.  Colorado state law, without regard to choice of law principles, shall otherwise govern and apply to any and all claims or disputes.  All face-to-face proceedings shall be conducted at a location which is reasonably convenient to both you and Qwest.

---

[1] The version of the Subscriber Agreement in effect when Plaintiff subscribed to Qwest's service is attached hereto as Exhibit B.  The Subscriber Agreement has been modified from time to time pursuant to Section 4 of the Agreement.  The current version of the Subscriber Agreement is attached hereto as Exhibit A. There have been no material changes to the Dispute Resolution and Arbitration Clause of the Subscriber Agreement since January 2006, the date the Subscriber Agreement first went into effect.

Arbitration is final and binding.  Any arbitration shall be confidential, and neither you nor Qwest may disclose the existence, content or results of any arbitration, except as may be required by law or for purposes of enforcement of the arbitration award.  The arbitrator may award any relief or damages that a court could award, except an arbitrator may not award relief in excess of or contrary to what this Agreement provides.  Judgment on any arbitration award may be entered in any court having jurisdiction.

(ii)   *Costs of Arbitration*.   The party requesting arbitration must pay the applicable AAA filing fee, except that if you are an individual using the Services for household or personal use and you initiate arbitration against Qwest: (1) you must pay one-half the arbitrator's fees up to a maximum of $125 if your claim does not exceed $10,000; (2) you must pay one-half the arbitrator's fees up to a maximum of $375 if your claim is more than $10,000 but less than $75,000; and (3) you must pay an Administrative Fee in accordance with the AAA's Commercial Fee Schedule if your claim exceeds $75,000 or if your claim is non-monetary. Except as provided in the preceding sentence, each party shall pay its own expenses of the arbitration, including the expense of its own counsel, witnesses, and presentation of evidence at the arbitration.   If any party files a judicial or administrative action asserting a claim that is subject to arbitration and another party successfully stays such action or compels arbitration, the party filing that action must pay the other party's costs and expenses incurred in seeking such stay or compelling arbitration, including reasonable attorneys' fees.

(b)   Waiver of Jury and Class Action.  By this Agreement, both you and Qwest are waiving rights to litigate claims or disputes in court (except small claims court as set forth in paragraph (a) above).  Both you and Qwest also waive the right to a jury trial on your respective claims, and waive any right to pursue any claims on a class or consolidated basis or in a representative capacity.

(*See* Ex. A., Sub. Ag. §17 at 12-13 (emphasis and typeface in the original).)

Plaintiff claims that the Dispute Resolution Clause should not be enforced here because it was presented on a take-it-or-leave-it basis, lacks mutuality, and is unconscionable with the class action waiver.  (Compl. ¶¶ 23-25.)

## STANDARD OF REVIEW

A motion to compel arbitration is treated as a motion to dismiss.  In deciding a motion to dismiss made pursuant to the Federal Arbitration Act, the Court first must determine whether an agreement to arbitrate exists at all and whether the arbitration clause is broad or narrow.  *Avedon*

*Eng'g Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997); *OrbitCom, Inc. v. Qwest Commc'ns Corp.*, No. 09-cv-00181-WDM-KLM, 2009 WL 1847355 (D. Colo. June 25, 2009).  When, as here, the arbitration clause uses broad language, "there arises a presumption of arbitrability and arbitration . . . will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it."  *OrbitCom*, 2009 WL 1847355, at *3 (quotations and citations omitted);  *May v. J.P. Turner & Co., LLC*, No. 08-cv-00641-WDM-BNB, 2008 WL 4533922, at *3-4 (D. Colo. Oct. 6, 2008) (holding phrase "arises out of" in an arbitration provision must be construed broadly and ordering the parties to arbitration).

Once a presumption of arbitration arises, Plaintiff bears the burden of proving facts sufficient to demonstrate that the arbitration clause does not apply to the dispute or is otherwise unenforceable.  *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000) (holding that party resisting arbitration has burden of proving that the claims are unsuitable for arbitration, that Congress intended to preclude arbitration of the claims or that arbitration is otherwise inappropriate) (*citing Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)).

On its face, the Arbitration Clause in the Subscriber Agreement is broad:  it requires that all claims and disputes arising out of, or relating to, the Agreement shall be resolved under the terms of the Dispute Resolution Clause.  (Sub. Ag. §17 at 12-13.)  Plaintiff cannot deny that the clause is broad or that his claims fall within the scope of this Agreement.

To overcome the presumption of arbitrability, Plaintiff must prove that the clause is unenforceable.  To meet this burden, Plaintiff claims that the contract lacks mutuality, is take-it-or-leave-it, and is unconscionable based solely on the allegations that he could not negotiate the terms, received the Agreement with his services, and his damages are $5 per month such that he

cannot pursue the claims without a class action process.  (Compl. at ¶¶ 22-25.)  Plaintiff has not

alleged sufficient facts, nor do sufficient facts exist, to prove that the Dispute Resolution Clause

of the Subscriber Agreement is unenforceable.

**ARGUMENT**

I.       **THE ARBITRATION CLAUSE IS VALID AND ENFORCEABLE.**

Under both the Colorado and federal law which govern the Agreement, the Arbitration

Clause is presumed to be valid and should "be enforced as written 'absent a conflicting and

overriding public policy to the contrary in a particular situation.'"  *Rains v. Found. Health Sys.*

*Life & Health*, 23 P.3d 1249, 1254 (Colo. App. 2001) (*quoting Peterman v. State Farm Mut.*

*Auto. Ins. Co.*, 961 P.2d 487, 493 (Colo. 1998)); *Bonanno*, 2009 WL 1068744, at *17; 9 U.S.C. §

4.  This presumption of validity is grounded in statutory law and Supreme Court precedent,

which acknowledges and directs that arbitration is generally fair and beneficial to both the

contracting parties and the public, and that arbitration is a sanctioned forum for the vindication of

rights.  *See Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

To meet his burden to prove unconscionability, and overcome the presumption of

validity, Plaintiff must demonstrate "overreaching . . . such as that which results from an

inequality of bargaining power or . . . an absence of meaningful choice on the part of one of the

parties;" ***and*** "contract terms which are unreasonably favorable" to the drafting or more powerful

party.  *See Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986).  In analyzing this test,

Colorado courts consider:  (1) whether the agreement is standardized and was executed by

parties of unequal bargaining strength; (2) whether there was a lack of opportunity to read or

become familiar with the document before signing it; (3) the use of fine print in the portion of the

contract containing the provision; (4) evidence that the provision was commercially reasonable

6

or should reasonably have been anticipated; (5) the terms of the contract, including substantive unfairness; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice, and (7) all circumstances surrounding formation, including the commercial setting, purpose, and effect.

Here, the balance of the *Davis* factors demonstrates that Plaintiff cannot satisfy his heavy burden and that the contract is conscionable.  Plaintiff freely chose Qwest's internet service over other services available, and the Agreement provides Plaintiff with fair and reasonable dispute resolution options:  he can pursue binding arbitration with limited discovery and cost-shifting to Qwest; a plaintiff-friendly small claims court setting with low court costs, no discovery, and appellate rights; or the more expensive district court setting with discovery and appeals for claims relating solely to Qwest's collection of a debt.  Indeed, in *Bonanno*, Judge Arguello already considered and rejected these same unconscionability arguments made by a putative class action plaintiff challenging an arbitration clause with a class action waiver like the clause at issue here.  *See generally Bonanno*, 2009 WL 1068744, at *17-22.

**A.     The Formation of the Agreement Containing the Arbitration Clause was Fair, Reasonable, and with Notice.**

The *Davis* factors relating to the formation of the contract (factors 1, 2, 3, and 6) demonstrate that the contract was fair and conscionable.

First, while Plaintiff laments that he could not alter the terms of the agreement (Compl. ¶ 23), a "take-it-or-leave-it " contract does not render a resulting agreement unconscionable. *Mullan v. Quickie Aircraft Corp.*, 797 F.2d 845, 851 (10th Cir. 1986); *see also Clinic Masters, Inc. v. Dist. Ct. for County of El Paso*, 556 P.2d 473, 475-76 (Colo. 1976) (holding that a form contract offered on a take-it-or-leave-it basis does not render the contract unconscionable).  As

the Eighth Circuit recently noted, "take-it-or-leave-it agreements between businesses and consumers are used all the time in today's business world.  If they were all deemed to be unconscionable and unenforceable contracts of adhesion, or if individual negotiation were required to make them enforceable, much of commerce would screech to a halt."  *Cicle v. Chase Bank USA*, 583 F.3d 549, 555 (8th Cir. 2009) (reversing district court and compelling arbitration of consumer claim against credit card issuer).

Similarly, the fact that one party to the contract has a superior bargaining position does not in itself render the contract adhesionary, particularly where, as here, Plaintiff could have obtained services from other service providers.  *See Batterman v. Wells Fargo Ag Credit Corp*., 802 P.2d 1112, 1116 (Colo. Ct. App. 1990) (holding that lender could use superior bargaining position and require "protective terms in the contract" without rendering the contract adhesionary); *Bonanno*, 2009 WL 1068744, at *21 ("[T]he fact that the class action bar works solely or primarily to [Defendant's] advantage does not render the provision substantially unfair.").  The United States Supreme Court has also held that inequality of bargaining power is insufficient to render an arbitration agreement unenforceable.  *See Gilmer*, 500 U.S. at 33; *see also Fonte v. AT&T Wireless Servs., Inc*., 903 So.2d 1019, 1025-26 (Fla. Dist. Ct. App. 2005) (finding that while there was no doubt that cellular provider had "almost unilateral bargaining power" the contract was not unconscionable).

Second, Plaintiff had ample opportunity, before and after executing the Subscriber Agreement, to become familiar with its terms.  He does not allege, because he cannot, that Qwest used pressure tactics to force him to sign the Agreement and, indeed, Plaintiff had a 30 day look-back period in which he could have rejected the contract terms and walked way from the

Agreement.  (*See* Sub. Ag. §12(a) at 11.)  The Agreement bolded and highlighted the Dispute Resolution Clause; the terms were not hidden or in a smaller font.  And, a contract term is not unconscionable simply because one party claims he did not read the contract.  Contract law has long held that a failure to read the contract is no defense to the enforceability of that contract. *Leverage Leasing Co. v. Smith*, 143 P.3d 1164, 1168 (Colo. App. 2006); *see also Rasmussen v. Freehling,* 412 P.2d 217 (Colo. 1966) (party who signs contract without reading it is barred by negligence from asserting that he is not bound by what he has signed).

Third, regarding the relationship of the parties, the Agreement was provided in a consumer setting in which the parties expected an ongoing relationship where service issues may need to be addressed.  In such a setting, and given the state and federal policy favoring arbitration, it is reasonable to assume that consumers will agree to alternative mechanisms to cost-effectively resolve disputes.  Plaintiff had many competitive options for internet service providers and chose to purchase internet service from Qwest.  In so doing, he should have reasonably expected to be bound to the terms and conditions for Qwest's services.  If he did not like those terms, he could have selected another provider.

Thus, the formation of the Agreement was fair, reasonable, and conscionable.

**B.    The Arbitration Clause is Fair and Provides Reasonable, Cost Effective Dispute Resolution Options.**

The *Davis* factors relating to the substantive fairness and commercial setting of the arbitration clause (factors 4, 5, and 7) also demonstrate that the Agreement is fair to all the parties and is conscionable.

A court evaluating the conscionability of a contract term, including the fairness of that term, considers the contract as of the time it was executed rather than looking at whatever

circumstances may have arisen later.  *See, e.g.*, *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 323 (6th Cir. 1998) (rejecting unconscionability challenge to arbitration clause); *Glopak Corp. v. U.S.*, 851 F.2d 334, 338 (Fed. Cir. 1988) (unconscionability determined at the time the contract was entered); *see also* Rstmt (Second) of Contracts § 208 (1981).  The Dispute Resolution Clause was designed to account for a wide variety of claims that could arise from internet service, be it service-related, price or charge-related, or relationship-related.  It is mutual, cost-effective, and provides a small-claims opt-out for plaintiffs who do not wish to arbitrate and a state or federal court opt-out for disputes relating solely to the collection of debts owed to Qwest.

### 1.       The Dispute Resolution Clause is Mutual.

The Arbitration Clause is mutual and binding on both Qwest and Plaintiff, and Plaintiff's assertion to the contrary, (Compl. ¶ 24), is simply wrong.  Pursuant to the contract, both parties are required to arbitrate all but cases that are within the jurisdiction of small claims court or cases that relate solely to the collection of a debt owed to Qwest.  (Sub. Ag. § 17(a) at 12 (providing that ***any*** dispute or claim arising out of or relating to the Services, Equipment, Software, or the Agreement will be resolved by binding arbitration).)

Regardless, in Colorado, as long as each party has provided consideration for a contract, lack of mutuality does not render a contract or arbitration agreement unenforceable.  *Rains*, 23 P.3d at 1254 (collecting cases with similar holding); s*ee also Bonanno* 2009 WL 1068744, at *21 ("[B]ilaterality of contractual terms is not required under Colorado law . . . .").  Thus, Colorado courts have declined to hold arbitration clauses void for lack of mutuality as long as the parties have provided each other with consideration beyond the promise to arbitrate. *See Rains*,

23 P.3d at 1254 (noting that most federal and state courts have held that mutuality is not a requirement of a valid arbitration clause, and summarizing state and federal cases so holding)).

2.      **The Dispute Resolution Clause is Reasonable and Cost-Effective.**

In addition, the Subscriber Agreement provides Qwest subscribers with reasonable and cost effective dispute resolution alternatives.  Indeed, Plaintiff does not challenge the actual terms of any portion of the Dispute Resolution Clause other than the class action waiver.  The Arbitration Clause ensures that claimants will not pay any more in arbitration fees than they would need to pay in court costs.  The Arbitration Clause caps claimants' arbitration costs to either $125 or $375, depending on the amount in issue, and requires a plaintiff to pay an Administrative Fee in accordance with the AAA's commercial fee schedule only if the plaintiff's claim exceeds $75,000 or is non-monetary.  (Sub. Ag., § 17(a)(ii).)

In upholding similar arbitration provisions, courts repeatedly acknowledge that such fees caps enable plaintiffs to pursue their claims (and thus vindicate their rights) in arbitration. Indeed, the Colorado Court of Appeals found a similar and indeed less favorable arbitration clause to be enforceable under Colorado law and ordered arbitration based in part on a cost-sharing provision within the arbitration clause.  *See Rains*, 23 P.3d 1249 (enforcing arbitration agreement between insurer and insured when arbitration agreement called for parties to equally share costs of arbitration because plaintiff failed to carry burden of proving that arbitration costs were prohibitive and citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000)).

The arbitration process itself is specifically designed to be efficient and cost-effective, which is one reason why such provisions are presumptively valid in the first place.  The savings that result from limited discovery, expedited proceedings and very limited appeals in arbitration compared to traditional court litigation would more than make up for the $125 arbitration cost.

*See Rains*, 23 P.3d at 1253 ("[A]n individual cannot reasonably claim to be deterred from pursuing his statutory rights in arbitration simply by the fact that his fees would be paid to the arbitrator where the overall cost of arbitration is otherwise equal to or less than the cost of litigation in court.'") (*quoting Bradford v. Rockwell Semiconductor Sys. Inc.*, 238 F.3d 549, 556 (4th Cir. 2001)).

The application of the Arbitration Clause to Plaintiff's claims underscores the fairness and cost-effectiveness of the clause.  Because Plaintiff's claim is for less than $10,000, he would pay no more than $125 in arbitration costs, less than half of what it cost him to file this case in federal court.  That cost will be recouped through the streamlined arbitration process.  Moreover, if Plaintiff prevails on his individual Colorado Consumer Protection Act claim, he will recover minimum statutory damages of $500, the $125 arbitration cost and any other costs he incurs, plus his reasonable attorneys' fees.  C.R.S. § 6-1-113(2)(a); § 6-1-113(2)(b).  Additionally, as explained below, if Plaintiff so chooses, he could avoid the cost of arbitration and proceed in small claims court.  Therefore the Dispute Resolution Clause is reasonable for Plaintiff and does not unreasonably favor Qwest, even taking into account the small amount of damages claimed by Plaintiff.

### 3.   The Alternative Forum Options For Litigation Ensure Fairness.

Finally, the alternative forums provided by the Dispute Resolution Clause ensures substantive fairness to the parties.  Small claims courts provide a less-expensive, constitutionally fair method to resolve small disputes.  To file in small claims court would cost Plaintiff only $31 or $55 in Colorado, or $60 in Utah.  In small claims court, the prevailing party is entitled to recover costs.  Colo. R. Civ. P. 516; Utah R. of Small Claims P. 7(f).  Small claims court also provides the benefit of being a public forum with appeal rights.  Colo. R. Civ. P. 519; Utah R. of

Small Claims P. 12.  As the Eleventh Circuit stated regarding a similar arbitration agreement, "the provision providing access to small claims tribunals was intended to benefit, not injure, consumers."  *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 879 (11th Cir. 2005).

The Dispute Resolution Clause also preserves the ability of Qwest subscribers to file in state or federal court if the dispute relates solely to the collection of a debt owed to Qwest.  In that case, the subscriber would be entitled to all the discovery and other procedures (other than class action proceedings) associated with state or federal court actions.

Plaintiff here had various options when crafting his Complaint against Qwest.  The Qwest Dispute Resolution Clause did not deny Plaintiff the ability to bring any substantive claim that he wished to assert and provides him with ability to fully pursue his claims.

## II. THE CLASS ACTION WAIVER IS VALID UNDER COLORADO LAW AND PRECLUDES PLAINTIFF'S CLASS ACTION CLAIMS.

The class action waiver here is valid and enforceable under Colorado law; to hold otherwise would contradict cases already decided in this District.  Plaintiff agreed to be bound by the waiver, and should not be permitted now to evade that agreement.

### A. This District Has Already Held that Class Action Waivers Are Enforceable Under Similar Circumstances.

In upholding the validity of class action waivers, this District (along with several other courts across the country) has already twice rejected the same unconscionability arguments made by Plaintiff where, as here, a plaintiff has the ability to recover statutory damages, costs and fees. In *Bonanno*, this Court upheld a class action waiver contained in a franchise agreement between Quiznos and a number of franchise owners.  *Bonanno*, 2009 WL 1068744, at *15-23.  In *Ornelas*, this Court upheld a class action waiver in the consumer context.  *Ornelas*, 2007 WL

274738, at \*1.  These decisions reasoned that (1) consumer protection and like claims are not cost-prohibitive for individual plaintiffs to bring, as opposed to antitrust claims, which require complex legal analysis and expert testimony; (2) under Colorado contract law, a contractual provision may benefit one party solely or primarily without being unconscionable or substantively unfair; (3) class action waivers serve a legitimate commercial purpose and public benefit because they help the defendant's bottom line, reduce dispute resolution costs, and afford greater predictability in decision-making, budgeting and planning for the defendant; (4) waivers are enforceable and not against public policy when the plaintiff, if successful in an individual lawsuit, can recover attorneys fees, statutory damages, and costs, and therefore is still in a position to "vindicate" his rights; and (5) that, at bottom, as discussed in more detail below, plaintiffs do not have a substantive right to bring a class action; rather, class actions are merely procedural mechanisms that may be waived by a party without violating public policy.  *See Bonanno*, 2009 WL 1068744, at \*15-23; *Ornelas*, 2007 WL 274738, at \*3-7.[2]  The same reasoning applies here, and this Court should not reverse course on this established precedent.

Consistent with this Court's decisions, the Third, Fourth, Fifth, Seventh, Eighth and Eleventh Circuits and various other federal and state courts have all enforced arbitration clauses with class action waivers.[3]  *See, e.g., Jenkins*, 400 F.3d at 868; *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005) (compelling arbitration of age discrimination and ERISA

---

[2] The Colorado Court of Appeals has also held that a party may be compelled to arbitrate even when arbitration renders a class action procedure unavailable.  The Colorado Court of Appeals noted that the Colorado General Assembly had "demonstrated its endorsement of arbitration" and that there was no statutory basis to deny arbitration merely because the result would be the loss of class action procedures.  *Rains*, 23 P.3d at 1253-54.

[3] The minority view is reflected in decisions from the Ninth Circuit and state courts that hold that class action waivers are sometimes unenforceable against consumers.

claims and finding that contract's ban on class proceedings was consistent with the goal of simple, informal and expeditious arbitration proceedings); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159 (5th Cir. 2004) (enforcing arbitration of breach of contract and deceptive trade practices claims and holding that class action waiver did not render arbitration clause unconscionable); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553 (7th Cir. 2003) (compelling arbitration of Truth In Lending claim and finding class action ban in contract precluded class claims); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir. 2002); *Johnson v. W. Suburban Bank*, 225 F.3d 366 (3d Cir. 2000); *In re Jamster Mktg. Litig.*, MDL No. 1751, 2008 WL 4858506, at *1 (S.D. Cal. Nov. 10, 2008) (finding class action waiver enforceable under Illinois, Maryland and Mississippi law and compelling arbitration for claims related to alleged wrongful cell phone billing);  *Litman v. Cellco P'ship*, C.A. No. 07-CV-4886 (FLW), 2008 WL 4507573, at *1 (D.N.J. Sept. 29, 2008) (finding that the FAA preempted state law that would hold class action waiver unconscionable and granting motion to compel individual arbitration of claims resulting from imposition of $.40 to $.70 administrative charges on cellular telephone bills).

Likewise, numerous courts in other jurisdictions have found that class action waivers are effective and enforceable even when there are small dollar amounts at issue when a plaintiff has a statutory right to the recovery of minimum statutory or special damages plus fees and costs. For example, in *Fonte v. AT&T Wireless Servs.*, a plaintiff brought a putative class action after her cellular service provider raised the charge for directory assistance calls by $.26 per call and began charging for busy or unconnected calls lasting longer than thirty seconds.  *Fonte,* 903 So.2d at 1022.  The Florida Court of Appeals rejected the plaintiff's argument that the class

action bar in that case was against public policy or unconscionable because the plaintiff retained the ability to collect her damages plus her costs and fees and retained the right to proceed in small claims court. *Id.* at 1024-25; s*ee also, e.g., Cronin v. CitiFinancial Servs., Inc.*, No. 09-2310, 2009 WL 2873252, at *4 (3rd Cir. Sept. 9, 2009) (finding plaintiff's ability to recover actual and punitive damages, costs, and attorneys' fees pursuant Fair Credit Reporting Act made plaintiff's individual claim "sufficiently valuable" such that defendant was not insulated from liability and therefore class action waiver was not unconscionable); *Jenkins,* 400 F.3d at 868 (holding that availability of attorney fees "provides plaintiffs with effective access to the judicial process" and noting that other federal circuit courts had found that "when the opportunity to recover attorneys' fees is available, lawyers will be willing to represent" plaintiffs in arbitration) (internal quotations and citations omitted); *Strand v. U.S. Bank Nat'l Ass'n ND*, 693 N.W. 2d 918 (N.D. 2005) (holding that class action waiver was not unconscionable in part because availability of attorneys' fees would assist plaintiff in retaining counsel and in obtaining an effective remedy).

      **B.**      **The Alternative Forum Options Reinforce the Fairness and Validity of the Class Action Waiver.**

Moreover, just as the availability of the alternative litigation forums is a positive factor to consider when evaluating an arbitration provision, the availability of a small claims forum or court, for cases involving the collection of debts owed to Qwest, also provides Plaintiff with alternative, constitutionally accepted means to vindicate his rights. Indeed, the Southern District of Illinois recently found that a plaintiff asserting consumer fraud claims, as Plaintiff does here, had not demonstrated that the unavailability of a class action effectively denied such a plaintiff legal recourse where the consumer had the option of proceeding in small claims court. *Crandall*

*v. AT & T Mobility, LLC*, Civ. No. 07-750-GPM, 2008 WL 2796752, at *5-6 (S.D. Ill. July 19, 2008) (granting motion to compel arbitration in case where plaintiff asserted that defendant's representations caused her to needlessly purchase a new cell phone).

      **C.**    **Class Actions Are A Procedural Tool, Not A Substantive Right**.

      Finally, setting aside the fairness of the class action waiver, the "right" to a class action is merely procedural, not substantive, there is no presumption in favor of class actions, and they may be waived by contract, just like any other procedural right. *Bonanno*, 2009 WL 1068744, at *7, *11 (Class actions are the exception to the general rule that parties conduct litigation on their own behalf and this exception is subject to a court's discretion).[4]

      Many courts have therefore observed that while a given statute might contemplate class action proceedings, such references in the statues do not create a right to or even a presumption in favor class action proceedings. For example, in *Cicle*, the Eighth Circuit recently reversed a district court's finding that a class action ban was unenforceable. The Circuit Court determined that while the state merchandising practices act at issue ***allowed*** for class actions, such a provision did not suggest a public policy in favor of class actions or a congressional sentiment that class actions were necessary to enforce the statute. *Cicle,* 583 F.3d at 555-56. Similarly, in *In re Universal Services Fund Telephone Billing Practices Litigation*, 300 F. Supp. 2d 1107 (D. Kan. 2003), the plaintiff resisted arbitration, claiming that the class action waiver and other aspects of the arbitration clause left him without an adequate forum for his antitrust and Federal

---

[4] S*ee also, e.g., Johnson*, 225 F.3d at 369 (holding that even though a class action may be unavailable in arbitration, "the right is merely a procedural one, arising under Fed. R. Civ. P. 23, that may be waived by agreeing to an arbitration clause"); *Belgrave v. Greene*, No. Civ.A. 00-B-1523, 2000 WL 35526417, at *4 (D. Colo. Dec. 5, 2000) ("[T]here is no 'right' to a class action. Rather, it is a procedural device controlled by Fed. R. Civ. P. 23.").

Communications Act claims.  *In re Universal*, 300 F. Supp. 2d at 1136-37.  The court held that there was nothing in the federal statutes at issue that indicated an intent to provide plaintiffs with a non-waivable right to class action procedures.  *Id.* at 1137.  The court observed that the federal statutes encouraged enforcement through treble damages, the recovery of attorneys' fees and administrative enforcement, and that any class proceedings were a result of procedural rules, not substantive rights.  *Id.*  In essence, the court found that the "strong congressional preference for an arbitral forum" was not overcome by the unavailability of class proceedings in arbitration.  *Id.*; s*ee also Fonte*, 903 So.2d at 1024-25 (holding that although the state's deceptive and unfair trade practices act was subject to enforcement through class actions, nothing in the text or history of the act evinced a congressional intent to create a non-waivable class action right).

Therefore, because class actions are merely a procedural right, no individual substantive right or statutory cause of action is precluded by a class action waiver, and it is not unconscionable for parties to contract away that right.

## CONCLUSION

For the reasons stated above, Defendants respectfully request this Court stay these proceedings and compel arbitration or dismiss this action if Plaintiff chooses to proceed in small claims court.

DATED this 29th day of December, 2009.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

   s/*Timothy R. Beyer*
Timothy R. Beyer
Peter J. Korneffel, Jr.
Zhonette M. Brown
Kathryn R. Rothman
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO  80202-4432
Telephone:  303.233.1100
Facsimile:  303.223.1111
Email: tbeyer@bhfs.com
      pkorneffel@bhfs.com
      zbrown@bhfs.com
      krothman@bhfs.com

*Attorneys for Defendants Qwest*
*Communications International Inc.,*
*Qwest Services Corp., Qwest Corp.,*
*Qwest Communications Company, LLC,*
*and Qwest Broadband Services, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 29, 2009, I electronically filed the foregoing **DEFENDANTS' MOTION TO COMPEL ARBITRATION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Jeffrey A. Berens<br>Darby K. Kennedy<br>Kristin A. Martinez<br>DYER & BERENS LLP<br>303 East 17th Avenue, Suite 300<br>Denver, CO 80203<br>jeff@dyerberens.com<br>darby@dyerberens.com<br>kristin@dyerberens.com<br><br>Michael D. Lieder<br>Sprenger & Lang, PLLC<br>1400 Eye Street, N.W., Suite 500<br>Washington, DC 20005<br>mlieder@sprengerlang.com<br><br><br>William M. Sweetnam<br>SPRENGER + LANG / SWEETNAM PLLC<br>5 Revere Drive, Suite 200<br>Northbrook, IL 60062<br>wms@sweetnamllc.com | Kimberlee L. Gunning<br>Law Office of Kimberlee L. Gunning, PLLC<br>3300 East Union Street<br>Seattle, WA 98122<br>kgunning@gunninglegal.com<br><br>Beth E. Terrell<br>Toby J. Marshall<br>Terrell Marshall & Daudt PLLC<br>3600 Fremont Avenue North<br>Seattle, WA 98103<br>bterrell@tmdlegal.com<br>tmarshall@tmdlegal.com |

 s/ Cynthia A. Smith
Cynthia A. Smith

5408\356\1348409.15